IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY LYNN MILLER, | : |
|           Plaintiff, | :     CIVIL ACTION |
| v. | : |
| KILOLO KIJAKAZI,[1] | :     No. 20-cv-03867-RAL |
| Acting Commissioner of Social Security, | : |
|           Defendant. | : |

## MEMORANDUM OPINION

**RICHARD A. LLORET**                                                                    **August 10, 2021**
**U.S. MAGISTRATE JUDGE**

Tammy Lynn Miller was denied Social Security benefits by the decision of an Administrative Law Judge ("ALJ"). Ms. Miller, proceeding *pro se*, filed this appeal contending that the ALJ's decision was reached in error. Pl. Br. at 2–7 (Doc. No. 14). Ms. Miller argues that the ALJ failed to consider certain medical evidence and that her condition has deteriorated since her original hearing.[2] *Id*. The Commissioner of Social Security ("Commissioner") responds that substantial evidence supports the ALJ's decision. Def. Br. at 1–10.

After careful review, I agree with the Commissioner and find that the ALJ's decision was supported by substantial evidence. For the reasons set forth below, I deny

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[2] Ms. Miller's brief is an email where she provides a narrative of her physical afflictions and generally takes issue with the ALJ's decision. *See* Pl. Br. Because Ms. Miller is proceeding *pro se*, I will construe her allegations liberally. *See Higgs v. Att'y General of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011). I will review each of Ms. Miller's specific issues with the ALJ's decision and, more generally, examine whether the decision was supported by substantial evidence.

Ms. Miller's request for review and affirm the final decision of the Commissioner.

## PROCEDURAL HISTORY

On March 9, 2017, Ms. Miller filed for disability insurance benefits ("DIB") and on March 30, 2017, she filed for supplemental security income ("SSI"). Administrative Record ("R.") 10, 283. Both applications alleged a disability beginning on February 1, 2017. *Id.* Both claims were initially denied on August 30, 2017.

After these denials, Ms. Miller requested a hearing before an ALJ. R. 218. The ALJ held the hearing on February 27, 2019. R. 147–173. On April 23, 2019, the ALJ denied Ms. Miller's claims. R. 7–26. Ms. Miller appealed this decision to the SSA's Appeals Council, who denied Ms. Miller's appeal on May 22, 2020. R. 1. On August 4, 2020, Ms. Miller filed this action in federal court. Doc. No. 1.

## FACTUAL BACKGROUND

### A.  The claimant's background.

Ms. Miller was forty-two at the time she filed her applications for DIB and SSI, making her a "younger person" under the regulations relevant at all times to her application. R. 279; 20 C.F.R. §§ 404.1563, 416.963. She has a high school education and previously worked as a hairdresser and administrative clerk. Ms. Miller's applications for Social Security benefits alleged disabilities based on fibromyalgia, anxiety disorder, depression, hip issues, and temporomandibular joint dysfunction. R. 324.

### B.  The ALJ's decision.

On April 26, 2019, the ALJ issued a decision finding that Ms. Miller was not disabled as defined by the Social Security Act. R. 10–22. The ALJ made the following

findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[3]

At step one, the ALJ concluded that Ms. Miller had not engaged in substantial gainful activity since February 1, 2017—the date of her alleged disability onset. R. 12.

At step two, the ALJ determined that Ms. Miller had three severe impairments: trochanteric bursitis, anxiety, and fibromyalgia. *Id*. The ALJ also noted that Ms. Miller had abnormal uterine bleeding and was obese but found that these two impairments were not severe. R. 13.

At step three, the ALJ compared Ms. Miller's severe impairments to those contained in the Social Security Listing of Impairments (the "Listing").[4] The ALJ found that Ms. Miller's musculoskeletal impairments did not meet or equal the criteria in Listing 1.02 (major dysfunction of a joint). R. 13. Further, Ms. Miller's fibromyalgia did not meet any of the listings found in Appendix I, and her anxiety did not meet or equal the criteria in Listing 12.06 (anxiety and obsessive-compulsive disorders). R. 13–15.

At step four, the ALJ assessed Ms. Miller's residual functional capacity ("RFC"), or "the most [Ms. Miller] can still do despite [her] limitations." 20 C.F.R. § 404.1545.

---

[3] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[4] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work she may have performed in the past. *Id.*

After a review of the objective medical evidence and medical opinion evidence, the ALJ concluded that Ms. Miller retained the ability to perform light[5] unskilled work, subject to certain limitations. R. 15–20. These limitations included "no climbing ladders, ropes, [or] scaffolds; no exposure to unprotected heights; occasional performance of postural activities; occasional climbing ramps and stairs; frequent reaching, handling, and fingering; no overhead reaching and lifting; and limited to unskilled work." R. 15. Based on Ms. Miller's RFC, the ALJ found that she was unable to perform her past relevant work as a hairdresser and administrative clerk. R. 20.

At step five, the ALJ identified three jobs that Ms. Miller could perform despite her limitations and considering her age, education, and work experience: assembler, cashier, and sorter. R. 21. Because the ALJ identified jobs that Ms. Miller could perform that existed in significant numbers in the national economy, she found that Ms. Miller was "not disabled." *Id.*

## DISCUSSION

### A.   The standard of review.

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Harftranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing to 42 U.S.C. § 405(g)). If the ALJ's

---

[5] As defined by the regulations, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

4

decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is substantial where it consists of "more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 759 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 455, 447 (3d Cir. 1983)).

**B.    The ALJ's opinion was supported by substantial evidence.**

Because I must interpret Ms. Miller's *pro se* brief liberally, I will first generally examine whether the ALJ's RFC assessment was supported by substantial evidence. Then, I will address three specific issues Ms. Miller raises: that the ALJ misinterpreted the vocational expert's testimony, that the ALJ failed to review a letter from Ms. Miller's rheumatologist, and that new evidence supports finding that Ms. Miller is disabled. I find that the ALJ's opinion was supported by substantial evidence and that Ms. Miller's contentions are meritless.

> 1.    *The ALJ's RFC assessment was supported by substantial evidence.*

The ALJ found that Ms. Miller could perform light, unskilled work—subject to the limitations discussed above—despite her medical conditions. R. 15. Ms. Miller submits that her conditions render her unable to work and the ALJ erred in her RFC. Doc. No. 14, at 2–6. I find that the ALJ's RFC assessment was supported by substantial evidence, and will deny Ms. Miller's request for review on this ground.

Ms. Miller's brief explains that her fibromyalgia and anxiety disorder have become progressively worse since 2011. R. 2. She describes these disorders making it difficult to work and hard to be a mother to her children. *Id.* Further, Ms. Miller asserts that there are days when she cannot get out of bed at all, which would make it impossible for her to find a job that would accommodate her conditions. R. 3. Ms. Miller suggests that the ALJ's RFC was unsupported by the record and did not capture the severity of her medical conditions. *See id.*

I find that the ALJ thoroughly reviewed the record evidence and her RFC conclusion was supported by substantial evidence. The ALJ first summarized Ms. Miller's testimony at the hearing, noting that Ms. Miller stated that she was on multiple

6

medications, received injections for pain three times a month, worked two to three hours a week as a hairdresser, and was "tired all of the time." R. 15. The ALJ explained that while Ms. Miller's impairments could reasonably be expected to cause her symptoms, she found that Ms. Miller's statements were not entirely consistent with the medical evidence of record. R. 16.

In October 2016, Ms. Miller presented with a full range of motion and muscle strength in all extremities notwithstanding her complaints of pain. R. 16; *see* R. 584. In May 2017, Ms. Miller presented with a limited range of motion and strength, both of which slightly improved after physical therapy. R. 16; *see* R. 532, 537, 558. At a 2017 mental state evaluation, Ms. Miller reported normal sleeping, some loss of appetite, and some anxiety and irritability. R. 17; *see* R. 564–65. The ALJ also noted that subsequent examinations in 2018 and 2019 included further complaints from Ms. Miller about her pain but that imaging and physical examination findings were mostly unremarkable. R. 17–18; *see* R. 596, 605–06, 768–86. Putting the medical record evidence together, the ALJ found that Ms. Miller had ongoing symptoms of "left trochanteric bursitis, muscle stiffness, weakness, fatigue, headaches, and jaw pain." R. 18. The ALJ also found, however, that Ms. Miller could care for herself and that her reports of weakened strength were not supported by imaging results and physical examinations. R. 19. Therefore, the ALJ found that Ms. Miller's limitations including the bursitis and fibromyalgia could be accommodated by restricting her to light work with certain additional limitations regarding climbing and unprotected heights. *Id.*

Next, the ALJ considered the medical opinion evidence. First, state agency physician Dr. Sanjay Gandhi opined that Ms. Miller could perform medium exertional

work and stand, walk, and sit for six hours total in each eight-hour workday. R. 19. The ALJ gave this opinion some weight but imposed additional exertional limitations. R. 19

The ALJ also considered the opinion of state agency psychological consultant Dr. Lori A. Young. Dr. Young found that Ms. Miller had had moderate limitations in her ability to understand, remember, apply information, and concentrate and mild limitations in her ability to care for herself and interact with others. *Id*. The ALJ gave this opinion some weight because although the record evidence supported limitations on Ms. Miller's ability to concentrate, the record did not entirely support limitations in the other areas of functioning. *Id*. The ALJ found that Ms. Miller could be accommodated with a restriction to unskilled work. *Id*.

Finally, the ALJ considered the opinion of consultative examiner Dr. Gregory Coleman. Dr. Coleman's medical source statement opined that Ms. Miller had no limitations in her ability to understand, remember, or apply information or concentrate, persist, or maintain pace, or adapt or manage herself. *Id*.; R. 562–70. The ALJ gave this opinion little weight and found that Ms. Miller's anxiety diagnosis meant that she should be restricted to unskilled work. R. 9.

After reviewing all the applicable evidence, the ALJ determined that Ms. Miller could still perform light, unskilled work subject to certain limitations on climbing. This finding was supported by substantial evidence. The ALJ thoroughly discussed both the objective medical findings and medical opinion evidence. The objective medical findings demonstrated that some limitations were warranted but did not indicate that Ms. Miller was entirely unable to work. *See, e.g.*, R. 595 (negative rheumatology workup); 794 (normal strength); 844 (normal electromyography measurements). And, none of the medical opinion evidence that the ALJ reviewed indicated that Ms. Miller was unable to

8

work. In fact, the ALJ imposed more limitations on Ms. Miller than two out of the three medical opinions. *See* R. 19. Taken together, both the objective medical findings and medical opinions provided substantial evidence for the ALJ's RFC determination.

        2.     *Ms. Miller's specific contentions are meritless.*

Next, Ms. Miller raises three issues with the ALJ's opinion: (1) that the ALJ misinterpreted the vocational expert's testimony, (2) that the ALJ's decision was contrary to a letter from Ms. Miller's rheumatologist, and (3) that new evidence since the hearing supports a finding that Ms. Miller is disabled. Doc. No. 14, at 2–9. I examine each issue in turn.

        a.     *The ALJ correctly interpreted and used the vocational expert's testimony.*

First, Ms. Miller submits that the ALJ misinterpreted the vocational expert's testimony "that no job is going to let [her] take the breaks [she] need[s]." *Id.* at 3. Ms. Miller also states that she "need[s] a longer break than 10 or 15 minutes" and that "[n]o job will allow [her] to call off on days when [her] body is in a [flare] from [her] pain and [she] can't function." *Id.* At the hearing, the ALJ asked the vocational expert whether an individual Ms. Miller's age and education level limited to light, unskilled work would be able to perform any work. R. 169. The ALJ's hypothetical included all of the restrictions that the ALJ ultimately included in Ms. Miller's RFC. *Id.*; R. 15. In response to the ALJ's hypothetical, the vocational expert identified assembler, cashier, and sorter positions that the hypothetical individual could perform. R. 169.

"[A] vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental

9

impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). An ALJ's hypothetical to a vocational expert need not include limitations that are reasonably discounted by the ALJ. *See Rutherford v. Barnhart*, 399 F.3d 546, 555 (3d Cir. 2005). These hypotheticals need only "include[] all of the limitations credibly established by the record." *Id.*

Here, the medical record did not credibly establish that Ms. Miller would need to take frequent days off from work or that she would need intermittent long breaks from work. As described above, the ALJ's review of the medical record demonstrated that there were limited imaging and examination findings establishing Ms. Miller's impairments. And, the medical opinion testimony—except for Dr. Young's opinion—suggested impairments that were less severe than the limitations the ALJ ultimately suggested. Regarding Dr. Young's opinion that Ms. Miller had moderate limitations in understanding and mild limitations in her ability to care for herself, the ALJ pointed out that this opinion was unsupported by the record. R. 19. The ALJ correctly pointed out that the medical record and Ms. Miller's testimony at the hearing did not support these limitations. *Id.* The hypothetical to the vocational expert, then, integrated all of the medical limitations credibly established by the medical record. The ALJ did not err in relying on the vocational expert's opinion.

> b. *The ALJ correctly evaluated Ms. Miller's conditions under the applicable Regulations and considered the letter from her rheumatologist.*

Second, Ms. Miller asserts that the ALJ incorrectly found that "no doctor has supported [her] impairment" and that "no connective tissue disease was listed for [her]." Doc. No. 14, at 4. Ms. Miller submits that these findings were contrary to a February 18, 2019 letter from her rheumatologist stating that Ms. Miller had

10

"fibromyalgia, myofascial pain and an undifferentiated connective tissue disease" that "can cause extreme fatigue, pain, increased depression and anxiety, and make tasks such as sitting, standing, and walking, and routine activities difficult." R. 941.

First, I note that contrary to Ms. Miller's assertion, the ALJ did not find that no doctor supported her stated impairments at step three of the opinion. Instead, the ALJ found that "[n]o treating or examining physician *has mentioned findings that meet the severity of the criteria of any listed impairment,* nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listings of Impairments." R. 13 (emphasis added). The ALJ only found that no treating or examining physician mentioned findings that met the severity of impairments in the Listing. This only meant that no physician's findings met the standards for an impairment listed under the Regulations. The ALJ also specifically examined Ms. Miller's fibromyalgia—a condition not listed in the Regulations—and found that the "objective medical evidence of record fails to provide any evidence that would meet or medically equal any of the listings found in Appendix 1." R. 14. The ALJ, therefore, did not find that no doctor supported Ms. Miller's impairments generally, but rather that no doctor mentioned findings that met the severity required by the Listing.

Later, when reviewing the entire medical record, the ALJ carefully considered all of the medical evidence Ms. Miller submitted. *See* R. 15–20. The ALJ's opinion considered the letter submitted by Ms. Miller's rheumatologist stating that Ms. Miller experienced variable flares. *See* R. 18. The rheumatologist's letter, however, was not medical opinion evidence and the ALJ found that it was not persuasive in the face of limited imaging and physical exam evidence. As evidenced by the ALJ's review of the medical evidence, years of previous medical evidence cut against the rheumatologist's

11

letter. Multiple exams and tests yielded unremarkable results that did not support the rheumatologist's assessment of Ms. Miller's condition. *See, e.g.*, R. 538 (normal lumbar and spine x-ray in February 2017), 578 (no evidence of connective tissue disease in July 2017), 771–72 (unremarkable ankle and feet x-rays in May 2018). The ALJ was not bound by the assessment of Ms. Miller's condition in the rheumatologist's letter, and the ALJ correctly examined this letter in the context of the other record evidence.

        c.        *Ms. Miller cannot present new evidence on federal review.*

Finally, Ms. Miller asserts that additional medical evidence post-dating the ALJ's hearing demonstrates that her condition has worsened. *See* Doc. No. 14, at 3. Ms. Miller states that she has seen new medical providers that have sent her for new imaging tests that found previously unknown conditions. *Id.* While this evidence may be relevant if Ms. Miller decides to reapply for Social Security benefits, I cannot consider it for the first time on federal review.

Under 42 U.S.C. § 405(g), I may remand the case for further consideration of new evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." New evidence is evidence that is not already in the administrative record. *See Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Regarding materiality, the Third Circuit has found that "[a]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.*

Here, Ms. Miller's proffered evidence is new because it was not before the ALJ. But, it is not material. Ms. Miller alleges that this new evidence would show that her

condition is now disabling even if it was not at the time of the ALJ's hearing. *See* Doc. No. 4, at 3–5. Under the Third Circuit's decision in *Szubak*, such evidence is not material because it is evidence of "subsequent deterioration of the previously non-disabling condition." 745 F.2d, at 833. While Ms. Miller may submit this evidence if she reapplies for Social Security benefits, I cannot consider it in my limited review of the ALJ's opinion.

## CONCLUSION

Based on the discussion above, I find that Ms. Miller is not entitled to relief on any of her claims. The ALJ's decision was supported by substantial evidence and Ms. Miller's contentions are meritless. Therefore, I deny Ms. Miller's request for review and affirm the final decision of the Commissioner.

**BY THE COURT:**

 *s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**